IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HAREEM MITCHELL, | : |
| Petitioner, | : |
| v. | : Civil Action No. 15-244-RGA |
| DAVID PIERCE, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
| Respondents. | : |

## MEMORANDUM OPINION

Hareem Mitchell. *Pro se* Petitioner.

Karen V. Sullivan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

April 11, 2016
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Hareem Mitchell's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1) The State filed an Answer in opposition, contending that the Petition should be dismissed in its entirety. (D.I. 10) For the reasons discussed, the Court will dismiss the Petition.

## I. BACKGROUND

As set forth by the Delaware Supreme Court in *Mitchell v. State*, 89 A.3d 477 (Table), 2014 WL 1202953 (Del. Apr. 8, 2014), the facts leading to Petitioner's arrest and conviction are as follows:

> The crimes in this case occurred on March 17, 2012. A masked man with a firearm entered Dot Discount in Dover. The man approached a customer, Robert Williams, from behind, placed a hand around Williams' neck, and thrust the firearm into his back. The man then approached the store clerk, Keandra Thompson, and demanded money. Thompson complied and placed the store's money into a black plastic bag. The man then ordered Thompson to lie face down on the ground, and left with the proceeds of his robbery. Once the man left, Thompson reported this incident to the police. Williams also reported this incident to the police.
>
> Corporal Michael Wisniewski of the Dover Police Department responded to the police radio dispatch regarding the Dot Discount robbery. The dispatch informed that the robber "was fleeing on foot northbound ... wearing all black clothing," and was possibly armed. Wisniewski headed toward Dot Discount in an unmarked black Ford Crown Victoria. He spotted a person in flight matching the description of the robber on South Governor's Avenue. The suspect, upon seeing Wisniewski, dove into a nearby bush. Wisniewski ordered the suspect to crawl slowly from the bush, but the suspect did not comply.
>
> With his firearm drawn, Wisniewski approached the suspect. Wisniewski testified that the suspect then fired four shots in his direction. Wisniewski fired five shots at the suspect in response. Wisniewski then realized that his gun malfunctioned, and he retreated for cover to correct the malfunction.
>
> The suspect ultimately threw down the bag of money and his firearm. Officers approached the suspect and instructed him to place his hands behind his back. The suspect refused to place his hands behind him. The suspect continued to resist while the officers arrested him. Wisniewski identified [Petitioner] as the man officers arrested.

> Near the place of [Petitioner's] arrest, police recovered a .38 revolver with four spent shells inside the cylinder, $730 in loose bills, $1,300.50 and two checks in a black plastic bag, and a bandana. Police also recovered a black cap and an additional $120 in [Petitioner's] sweatshirt. Finally, police recovered the five spent .40 caliber shells from Wisniewski's gun.

*Mitchell,* 2014 WL 1202953, at *1.

In May 2012, a New Castle County grand jury returned an indictment charging Petitioner with attempted first degree murder, two counts of first degree robbery, three counts of possession of a firearm during the commission of a felony ("PFDCF"), four counts of first degree reckless endangering, wearing a disguise during the commission of a felony, and resisting arrest with force or violence. (D.I. 10 at 1); *see Mitchell*, 2014 WL 1202953, at *1. Defense counsel filed a motion to withdraw as counsel on October 17, 2012. (D.I. 12, Del. Super. Ct. Crim. Dkt. at Entry No. 19) The Superior Court granted that motion after a lengthy colloquy with Petitioner, and petitioner proceeded to trial *pro se* with standby counsel. (D.I. 12, Del. Super. Ct. Crim. Dkt. at Entry No. 21) Prior to trial, the State entered a *nolle prosequi* on two counts of first degree reckless endangering. (D.I. 10 at 3) On January 23, 2013, a Superior Court jury convicted petitioner on the ten remaining charges. *See Mitchell*, 2014 WL 1202953, at *1. The Superior Court sentenced Petitioner on March 14, 2013 to a total of eighty-nine years at Level V imprisonment, suspended after seventy-five years sixty days, for three years of decreasing levels of supervision. (D.I. 10 at 3) Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentences on April 8, 2014. *See Mitchell*, 2014 WL 1202953, at *8.

## II. STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).

2

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). The Supreme Court recently expanded the purview of the *Richter* presumption in *Johnson v. Williams*, 133 S.Ct. 1088 (2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Id.* at 1095-96. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] de novo." *Id.* at 1091-92.

3

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III. DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court, asserting the following four grounds for relief: (1) the trial court made several erroneous rulings that deprived him of due process; (2) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to collect or produce certain evidence; (3) there was insufficient evidence to support his conviction for attempted first degree murder; and (4) the cumulative effect of the Superior Court's and the State's errors prevented Petitioner from "enjoying" a fair trial. The State asserts that Petitioner appears to have exhausted state remedies for all four claims by presenting them to the Delaware Supreme Court on direct appeal. However, even if Petitioner has not, the State waives exhaustion and asks the Court to review the claims on the merits. (D.I. 10 at 4)

### A. Claim One: The Superior Court's Erroneous Evidentiary Rulings Deprived Petitioner of Due Process

In Claim One, Petitioner asserts that the Superior Court violated his due process rights by: (1) improperly admitting a surveillance videotape of the crime scene; (2) improperly refusing to review *in camera* the video surveillance of the crime scene; (3) improperly refusing to review *in camera* the disciplinary records of officers who testified at trial; and (4) failing to give a

4

"missing evidence" instruction for "missing bullets allegedly shot by [petitioner], forensic tests [the] prosecution demanded not be done or performed, and [a] mobile vision videotape from [the] car of [the] officer/victim who testified." (D.I. 1 at 5-7)

Claims alleging errors in state evidentiary rulings are only reviewable in habeas corpus if the evidentiary rulings rise to the level of a due process violation. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A petitioner establishes a due process violation by showing that the evidentiary error was so pervasive that he was denied a fundamentally fair trial. *Biscaccia v. Attorney General of State of N.J*, 623 F.2d 307, 312 (3d Cir. 1980). In order to satisfy this burden, a petitioner must demonstrate that the ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *See Thomas v. Warren*, 2015 WL 6507833, at *11 (D. N.J. Oct. 26, 2015).

### 1. Allegations one and two: admission of surveillance videotape

In allegations one and two of Claim One, Petitioner contends that the trial court erred in denying his motion *in limine* to have a surveillance videotape suppressed or reviewed *in camera*. (D.I. 12 at 122) He asserts that the videotape served no probative value because it "was unclear," did not contain sound, "and did not show [his] face or [him] shooting at anyone." (D.I. 1 at 6) The record reveals that two surveillance videotapes were admitted during the trial: one from a camera located inside Dot Discount and one from two cameras located on the outside of the State Election Commissioner's Office Building ("Election Commissioner's Office") which faced the street and a parking lot. Petitioner appears to be complaining about the videotape taken from the Election Commissioner's Office cameras. Because Petitioner did not raise this issue on direct appeal, the Delaware Supreme Court did not have an opportunity to consider the merits of

5

his argument. Nevertheless, given the State's waiver of the exhaustion doctrine, the Court will review these allegations *de novo*.

The Court finds the following background information helpful in considering Petitioner's instant contention. On January 7, 2013, during the last of five different motion hearings, the Superior Court listened to both parties' arguments regarding Petitioner's motion to suppress the videotape. (D.I. 12 at 135-37) The Superior Court denied Petitioner's motion, but explicitly stated that the trial judge[2] to be assigned to the trial would have to make a determination whether

> to look at the video *in camera* to make a determination whether it's not otherwise prohibited by the rules of evidence. On the face of it, I would have to say initially this appears to be admissible; but a final determination has to be made by the trial judge. At this time, your motion with respect to the video has to be denied, but you can raise it again.

(D.I. 12 at 137) At the start of the trial on January 14, 2013, Petitioner re-asserted his motion to suppress the videotape from the Election Commissioner's Office. (D.I. 12 at 141) The presiding judge denied the motion and explicitly stated the issue "is something that is subject to cross-examination." (D.I. 12 at 142)

In this proceeding, Petitioner does not dispute that the Election Commissioner's Office videotape showed the shooting incident with which he was charged. Moreover, the trial transcript reveals that Petitioner effectively cross-examined the police officers who narrated and/or described the events depicted in the Election Commissioner's Office videotape that was played for the jury in the courtroom. (D.I. 12 at 170, 176-81, 221-24) Even if the videotape was damaging to Petitioner's case, and assuming for the sake of argument that it was erroneously admitted into evidence, the Court concludes that allegations one and two of Claim One do not

---

[2] The judge presiding over the motion hearing explained that a different judge would be assigned to Petitioner's trial.

6

establish any due process violation because Petitioner has not demonstrated that the Superior Court's decision to admit the videotape was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair."

### 2. Allegation three: disciplinary records of police officers

The Superior Court denied Petitioner's motion to subpoena the disciplinary records of the police officers who testified during the trial and also refused to review those records *in camera* because Petitioner did not provide any factual basis for seeking those disciplinary records. (D.I. 12 at 129-130) On direct appeal, the Delaware Supreme Court denied Petitioner's instant due process argument as meritless. Therefore, habeas relief will only be available if the Delaware Supreme Court's denial of the argument was either contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.

After reviewing the record, the Court concludes that Petitioner's failure to provide any factual predicate to believe that the disciplinary records contained any impeachment material or relevance precludes him from showing that the trial court's refusal to review those records denied him a fundamentally fair trial. Accordingly, allegation three of Claim One fails to demonstrate that Petitioner's due process rights were violated by the Superior Court's refusal to subpoena or review *in camera* the police officers' disciplinary records.

### 3. Allegation four: missing evidence instruction

Petitioner's last allegation of Claim One complains about the Superior Court's failure to provide a "missing evidence" instruction for "missing bullets allegedly shot by [Petitioner]," forensic tests that were not performed, "and [a] mobile vision videotape from car ["dashboard video recording"] of officer [Wisniewski] who testified ." (D.I. 1 at 7) On direct appeal, the

7

Delaware Supreme Court explained that a prerequisite for a missing evidence instruction "is that the requested material must be subject to disclosure under *Brady* or Superior Court Criminal Rule 16." *Mitchell*, 2014 WL 1202953, at *4. The Delaware Supreme Court then denied Petitioner's instant argument after determining that none of the "missing evidence" identified by Petitioner triggered a duty to disclose under *Brady*. *Id.*

On habeas review, the Court must defer to the Delaware Supreme Court's interpretation and application of Delaware law that a "missing evidence" instruction is only available when the "missing evidence" triggered a duty to disclose under *Brady*. As set forth below in its discussion of Claim Two, the Court respects the Delaware Supreme Court's holding that the bullets, forensic tests, and dashboard video recording for which Petitioner sought a missing evidence instruction either did not constitute *Brady* material or trigger a duty to disclose under *Brady*. Consequently, this final allegation of Claim One fails to establish a due process deprivation. Accordingly, the Court will deny Claim One in its entirety.

### B. Claim Two: *Brady* Violations

Next, Petitioner contends that the State violated his due process rights under *Brady* by failing to produce the following evidence: DNA and fingerprint test results from the crime scene; gunshot residue analysis ("GSR") of Petitioner's hoodie; the dashboard video-recording from Officer Wisniewski's police car; bullets shot by Petitioner; grand jury minutes; and the officer/victim's counseled statement regarding the officer-involved shooting. The Delaware Supreme Court denied Petitioner's *Brady* claim as meritless. Therefore, habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

8

A violation of *Brady* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). In order to prevail on a *Brady* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently"; and (3) the evidence was material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In turn, "a reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.*

In addressing Claim Two, the Delaware Supreme Court cited *State v. Wright*, 67 A.3d 319, 324 (Del. 2013), which cites and applies the standard from *Brady*. Therefore, the Delaware Supreme Court's decision in Petitioner's case was not contrary to clearly established federal law. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because the court appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Additionally, after reviewing the record within the aforementioned framework, the Court concludes that the Delaware Supreme Court's rejection of Petitioner's *Brady* claim did not

9

involve an unreasonable application of clearly established Federal law. The Delaware Supreme Court denied the instant Claim because:

> First, the State never performed the gunshot residue testing that [Petitioner] sought, because the residue would not remain affixed to [Petitioner's] hooded sweatshirt. Second, the State determined that the DNA and fingerprint test results were useless (a point that [Petitioner] could have argued to the jury), and thus did not require production. Third, the video recorder operational manual was not relevant because the State provided Petitioner with the only dashboard video-recording of the incident. Fourth, a detective determined that removing the bullets might cause damage to the home. Fifth, the miscellaneous items near Marker # 12 play no apparent role in [Petitioner's] defense. Sixth, [Petitioner] fails to identify the significance of the unnamed eyewitnesses. And seventh, any police radio logs would not have altered the course of trial, because the State admitted into trial evidence an audio tape of the police dispatches. In sum, [Petitioner's] failure to obtain the evidence he sought does not undermine our confidence in the trial's outcome.

*Mitchell*, 2014 WL 1202953, at *4.[3]

Petitioner has not presented any clear and convincing evidence in this proceeding to rebut the Delaware Supreme Court's explicit and implicit factual conclusions that: (1) the State was not able to perform the GSR testing on Petitioner's hoodie; (2) the DNA and fingerprint test results were of no value; (3) the State provided Petitioner with the only dashboard video-recording that existed, which came from Corporal Barrett's police car;[4] and (4) the police did not remove the bullets because such action may have damaged the home. Consequently, this

---

[3]On direct appeal, Petitioner argued that the State violated *Brady* by refusing to supply operational manuals for the dashboard video-recording systems in the police cars. (D.I. 12 at 54) Although not entirely clear, Petitioner appeared to want the operational manuals in order to learn how to verify that the sole dashboard video-recording that the State provided to him actually came from Corporal Barrett's police car and not Officer Wisniewski's police car. (D.I. 12 at 130)

[4]The police testimony during Petitioner's trial established that there was only one police dashboard video-recording, which came from Corporal Barrett's police car, (D.I. 12 at 184, 223, 226), and not from Officer Wisniewski's police car (D.I. 12 at 180-81, 222, 225-26). Thus, by asserting that "the State provided Petitioner with the only dashboard video-recording of the incident," the Delaware Supreme Court implicitly found that there was no dashboard video-recording from Officer Wisniewski's police car.

uncollected, untested, unsupplied, or non-existent evidence did not constitute "suppressed" evidence for *Brady* purposes.

In addition, Petitioner has not demonstrated the materiality of the unproduced DNA and fingerprint test results, because he has not shown a reasonable probability of a different result had the DNA and fingerprint tests been disclosed to the defense. For instance, the State produced two eyewitnesses who placed Petitioner at the store that was robbed and stated that he had a gun, and also produced two different eyewitnesses who testified that Petitioner fired the gun at Officer Wisniewski. The evidence against Petitioner was strong, if not overwhelming. Second, Petitioner was able to elicit testimony from Detective Simpkiss that no useful fingerprints were taken from a door in the store that was robbed or a bag that was believed to have been in Petitioner's possession. (D.I. 12 at 227) Third, Petitioner cross-examined Detective Simpkiss about the fact that no fingerprints were found on the gun retrieved from the crime scene. (D.I. 12 at 200) Finally, as the Delaware Supreme Court explained, Petitioner was not prejudiced by the absence of the test findings because, as a result of the State's failure to perform/produce the GSR findings and/or DNA/fingerprint findings, Petitioner "had his best case scenario: no DNA or GSR evidence connecting him to the crime." *Mitchell*, 2014 WL 1202953, at *7.

Petitioner has also failed to demonstrate the favorability and materiality of the remaining "suppressed" evidence about which he complains. For instance, Petitioner has not explained what the unnamed witnesses would have said that would have been helpful to the defense, or how questioning the police officer about having a police union attorney present during the internal affairs investigation of the shooting would have been helpful. Similarly, Petitioner's

11

conclusory statement that there was "significant cause for examination of the grand jury minutes" neither demonstrates the minutes' exculpatory/impeachment value nor shows that those minutes would have been helpful to the defense.

In sum, the Court concludes that the Delaware Supreme Court reasonably applied *Brady* in rejecting the allegations in Claim Two, and reasonably determined the facts based on the evidence produced at trial. Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

### C. Claim Three: Insufficient Evidence of Attempted First Degree Murder Violated Petitioner's Due Process Rights

In Claim Three, Petitioner contends that the Superior Court violated his due process rights by denying his motion for judgment of acquittal, in which he argued that the State failed to prove the necessary elements of attempted first degree murder. Specifically, Petitioner asserts that the State failed to prove that he acted intentionally or that he took a substantial step to murder Officer Wisniewski. According to Petitioner, "allegedly firing a gun within an unplanned confrontation doesn't constitute attempted intentional murder." (D.I. 1 at 13) The Delaware Supreme Court denied this Claim as meritless. Therefore, Petitioner must satisfy § 2254(d) to obtain habeas relief.

The United States Supreme Court precedent governing Petitioner's insufficient evidence claim is *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court

12

faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. However, it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.*

When denying the instant insufficient evidence claim, the Delaware Supreme applied a standard identical to *Jackson*'s standard. Therefore, the Delaware Supreme Court's decision was not contrary to *Jackson*.

Nor was its decision based on an unreasonable application of *Jackson*. In order for Petitioner to be convicted of attempted first degree murder, the State had to establish that he acted intentionally (Del. Code Ann. Tit. 11, § 636(a)(1)) and took a substantial step to commit murder (Del. Code Ann. Tit. 11, § 531(2)). Evidence of a plan is not a statutory element of the offense; the only preplanning involved is in the "attempt" definition of § 531(2), which may be inferred by Petitioner's act of firing four shots at Officer Wisniewski. *See* Del. Code Ann. Tit. 11, § 306(c)(1)(rebuttable presumption exists that person intends the natural and probable consequences of the person's act); Del. Code Ann. Tit. 11, § 307 (in determining defendant's intention to kill, finder of fact may infer, if other circumstantial evidence justifies use of conclusion, that actor intended probable and natural consequences of his act); *Downes v. State*, 676 A.2d 902 (Table), 1996 WL 145836, at *1 (Del. Mar. 13, 1996).

The jury in Petitioner's trial was presented with the following evidence. The video surveillance tape from the Election Commissioner's Office captured the police shootout between Petitioner and Officer Wisniewski, during which nine gunshots were fired. Officer Wisniewski independently testified about what happened, and explained the Election Commissioner's Office

13

videotape as it was played for the jury. During his independent testimony, Officer Wisniewski described how Petitioner dove into a bush after seeing Wisniewski drive up in his unmarked police car. (D.I. 12, App. to State's Ans. Br. at B-86) Officer Wisniewski stopped the car, exited, and started giving orders for Petitioner to crawl slowly out of the bush. When Petitioner did not comply, Officer Wisniewski approached the suspect with his firearm drawn. (D.I. 12 at 162-163) At that time, Petitioner fired four shots in the Officer's direction. (D.I. 12 at 164) Officer Wisniewski described how Petitioner's first gunshot "sizzled" and "swooshed" by his left ear, and how he, Wisniewski, shot five gunshots toward Petitioner. At that point, Officer Wisniewski's gun malfunctioned and he had to take cover behind his police car. Once he fixed the malfunction, Officer Wisniewski made a tactical reload and ordered Petitioner to come out of the bushes. Once again, Petitioner did not comply. (D.I. 12 at 164) Petitioner eventually started to come out of the bushes, stood up, and put his hands up in the air. Officer Wisniewski testified that he could "still see the gun in his right hand clenched on it. And he had the money bag in his left hand, and then he opened up his hand. I could see his index finger was still on the trigger. [] [T]hen he threw the gun and he threw the money bag and, then, he finally came out of the bushes." (D.I. 12 at 165)

After viewing, in the light most favorable to the State, Officer's Wisniewski's testimony describing how Petitioner hid in a bush after making eye contact with him and how Petitioner's first gunshot "sizzled and swooshed" by his left ear, the Court concludes that the evidence was sufficient for a rational trier of fact to make the rational inference that Petitioner both intended to cause, and took a substantial step toward causing, the death of Officer Wisniewski. Therefore, the Court will deny Claim Three because Delaware Supreme Court's denial of this Claim

involved a reasonable application of *Jackson*, and was based on a reasonable application of the facts in light of the evidence presented in the state court proceedings.

### D. Claim Four: Cumulative Effect of Trial Errors Violated Petitioner's Due Process Rights

Finally, Petitioner contends that cumulative effect of the Superior Court's errors and the State's errors throughout his trial demonstrate the "elements of a bad faith investigation with multiple acts of malicious and/or lawless behavior, as well as a determined persistence to prevent [him], a *pro se* defendant, from enjoying a fair trial." (D.I. 1 at 16) Petitioner bases this argument on the State's "refusal to pursue" potentially favorable DNA and GSR test results, as well as the Superior Court's failure to "allow" Petitioner to enjoy an "inference of innocence for all missing evidence." (D.I. 1 at 17) Petitioner also asserts that that his due process rights were denied when: (1) the Superior Court judge refused to provide funding for a forensic ballistics expert to review the shooting scene; and (2) the police manipulated evidence that originally did not exist, as demonstrated by the presentation of a police diagram showing a potential flight path of a bullet that was never located.

Petitioner did not exhaust state remedies for Claim Four because he did not present the cumulative error argument to the Delaware Supreme Court on direct appeal. However, given the State's waiver of the exhaustion doctrine, the Court will review this Claim *de novo*.

According to Third Circuit precedent, the cumulative error doctrine "allows a petitioner to present a standalone [constitutional] claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014). Cumulative errors

15

warrant habeas relief "if they had a substantial and injurious effect or influence in determining the jury's verdict."[5] *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007).

As previously discussed, the Court has determined that the absence of GSR, DNA, and fingerprint test results, and the Superior Court's refusal to provide a missing evidence instruction, did not violate Petitioner's due process rights under *Brady*. With respect to Petitioner's contention that the Superior Court's refusal to provide funding for a forensic ballistics expert violated his right to due process, Petitioner has not provided any clear and convincing evidence to rebut the Delaware Supreme Court's factual determination that a ballistics expert was not essential to Petitioner's trial preparation. Petitioner also cannot demonstrate that the absence of such an expert prejudiced his defense, since Petitioner himself did not object to the State's evidence concerning Wisniewski's location during the gunfight, the eyewitness resident testimony concerning the bullet holes in the walls of the nearby residence, or the photographs of the bullet holes. Finally, Petitioner's vague and conclusory assertion that the police manipulated evidence that did not originally exist is belied by the record, specifically, the eyewitness testimony and surveillance videotapes. To the extent Petitioner's assertion about a police diagram showing the potential flight path of a bullet that was never located constitutes his attempt to support his allegation of evidence manipulation, his failure to cross-examine Detective Simpliss about the police diagram defeats that attempt to validate his assertion of error. (D.I. 12 at 207) In short, none of Petitioner's alleged errors actually constitute errors.

When performing a cumulative error analysis, a court must "aggregate[] all the errors that individually have been found to be harmless, and therefore not reversible, and [] analyze[]

---

[5] Although the Third Circuit has not resolved whether the cumulative error doctrine constitutes clearly established Federal law for the purpose of § 2254(d) review, this uncertainty does not affect the Court's *de novo* review of the instant Claim.

16

whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Albrecht*, 485 F.3d at 139. As an initial matter, the Court's previous determination that Petitioner's instances of error were not actual errors would appear to preclude the application of the cumulative error doctrine, because there are no harmless errors whose prejudice the Court must consider cumulatively against the trial record. *See Graham v. Dist. Att'y Bucks Cnty*, 2015 WL 1229492, at \*24 (E.D. Pa. Aug. 18, 2014). Nevertheless, considering the substantial and significant evidence of Petitioner's guilt in the record, even if the Court were to aggregate these alleged errors, the Court concludes that the cumulative effect of these errors did not undermine the reliability of the jury verdict or have a substantial influence on the outcome of the trial. Accordingly, Claim Four does not warrant habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied as meritless. An appropriate Order will be entered.

18